UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,       Criminal Case No. 09-20221
v.       Civil Case No. 12-10989
    HON. DENISE PAGE HOOD
ROSA GENAO (D-9),

    Defendant-Petitioner.
_____/

**ORDER DENYING MOTION UNDER 28 U.S.C. § 2255
TO VACATE, SET ASIDE, OR CORRECT SENTENCE,
ORDER DISMISSING CIVIL CASE NO. 12-10989,
and
ORDER GRANTING CERTIFICATE OF APPEALABILITY**

**I.   BACKGROUND**

On August 27, 2010, a jury found Defendant Rosa Genao guilty on the following charges: one count of Conspiracy to Commit Medicare Fraud, 18 U.S.C. § 3149; six counts of Health Care Fraud, 18 U.S.C. § 1347 and Aiding and Abetting, 18 U.S.C. § 2; and one count of Destruction or Alteration of Records, 18 U.S.C. § 1519 and Aiding and Abetting, 18 U.S.C. § 2. (Jury Verdict Form, Doc. No. 200) Genao was sentenced to concurrent terms of 97 months of imprisonment on each count, followed by concurrent terms of 2 years on supervised release on each count. Genao was ordered to pay restitution in the amount of $1,789,234.74 (jointly and severally). (Judgment, Doc. No. 242, filed March 21, 2011) A Notice

of Appeal was filed by Genao on March 16, 2011. (Doc. No. 238) The appeal was voluntarily dismissed on January 6, 2012. (Doc. No. 280).

Genao filed, *pro se*, the instant Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 on March 5, 2012. (Doc. No. 281) The Court appointed counsel on behalf of Genao on July 31, 2012. (Doc. No. 301) The parties engaged in discovery regarding the ineffective assistance of counsel claim raised by Genao in her motion. An evidentiary hearing was held on July 23, 2013. The parties thereafter submitted supplemental briefs.

## II. ANALYSIS

Section 2255 authorizes a federal prisoner to move the district court to vacate a sentence. 28 U.S.C. § 2255(a). Motions brought under 28 U.S.C. § 2255 are subject to a one-year limitations period established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Dunlap v. United States,* 250 F.3d 1001, 1004-05 (6th Cir. 2001). The AEDPA established a one-year limitations period for § 2255 motions, generally running from "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). When a movant does not pursue a direct appeal to the court of appeals, the conviction becomes final on the date the time for filing such an appeal expires. *Sanchez-Castellano v. United States,* 358 F.3d 424, 428 (6th Cir. 2004).

Under the Sixth Amendment, a defendant has a right to "have the Assistance of Counsel for his defence." U.S. Const. Amend. VI. A defendant has a right to "reasonably effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court articulated a two prong test for ineffective counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown of the adversary process that renders the result unreliable.

*Id*. "There is a strong presumption that legal counsel is competent." *United States v. Osterbrock*, 891 F.2d 1216, 1220 (6th Cir. 1989). In addition, a "reviewing court must give a highly deferential scrutiny to counsel's performance." *Ward v. United States*, 995 F.2d 1317, 1321 (6th Cir. 1993). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. The defendant bears the burden of showing that counsel was so deficient and that prejudice resulted from counsel's errors. *Id.* at 686-87.

In *Missouri v. Frye,* 132 S.Ct. 1399 (2012) and *Lafler v. Cooper,* 132 S.Ct. 1376 (2012), the Supreme Court held that to establish an ineffective assistance of counsel claim in the plea-bargaining process, the defendant must show not only that counsel was deficient, but that the outcome of the plea process would have been different with competent advice. *Lafler*, 132 S.Ct. at 1384 (citing *Frye*, 132 S.Ct. at 1388-89). In *Frye*, the Supreme Court held that defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. *Frye*, 132 S.Ct. at 1408. Counsel's failure to convey the plea offer to his client or allow the client to consider the offer, is ineffective of counsel claim under the Constitution. *Id.* The defendant must then show prejudice–a reasonable probability that the earlier plea offer would have been accepted by the defendant, had the defendant been informed of the plea offer. *Id.* at 1409. A defendant must also demonstrate that the prosecution would not have canceled the offer or that the trial court would have accepted the plea. *Id.* The defendant must show a reasonable probability that the

end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. *Id.*

This issue remains in this motion: "whether Petitioner is entitled to relief under § 2255 based on her claim that her prior counsel was ineffective by failing to effectively convey to her the government's plea offer." (Pet. Supp. Br., Doc. 318, p. 1) Genao claims that it was always her intention to accept a plea offer from the Government, and that her trial counsel, Leonard Sands, failed to convey such to her prior to or during the trial. The Government responds that the evidence supports a finding that Genao's counsel conveyed the plea offer to Genao.

Genao testified that she was born and raised in the Dominican Republic. Her native language is Spanish. She received a medical doctor degree in the Dominican Republic, with a pediatric specialty. Genao came to the United States in 1990 where she studied English, passed all her medical boards and completed her residency in Puerto Rico. She admits she is able to communicate in English, but has some difficulty with technical issues or if someone speaks quickly.

At the criminal investigation stage of the case, Genao retained counsel, Mr. Alfaro. She later learned that Alfaro was representing another co-defendant, who later became a key government witness against her. Genao sought to retain new counsel. Her stepfather told her about an advertisement for the Cochran Law Firm

he saw at a bus stop in Miami. Both she and her husband, Juan De Oleo, a co-defendant in this case, called the phone number listed in the advertisement. Peter Heller responded to the call. Heller explained that he would represent Genao's husband and that he would refer Genao to another attorney, Leonard Sands. Genao indicated she communicated with Sands' office usually through his paralegal, Yasir Mercado, who spoke Spanish. At the request of Sands, Genao made recordings about her life. Her son and niece translated Genao's notes from Spanish to English.

Sands recommended to her to wait and see what the Government would offer Genao. Genao testified that Sands and Heller indicated to her and her husband that they would "pretend" to go to trial in order to intimidate the Government, but that at the end they would not go to trial. Genao indicated that she often asked Sands if he had spoken to the prosecutor, but that Sands always replied that he had not spoken to them.

Sands and Heller traveled to Washington, D.C. in April 2010 to meet with the Government prosecutor, Benjamin Singer. They indicated to Genao and her husband that Singer was not offering anything so they wanted to go to someone above Singer's level. When they returned, Sands and Heller met with Genao and her husband on two occasions, April 16 and 19, 2010. Heller's secretary, Joanna,

was at the meeting to help translate, but she did not speak Spanish very well. Genao testified that at no time during the meetings did Sands tell her or show her a proposed plea agreement from the Government. Genao testified that the first time she saw the proposed plea agreement was when her current counsel came to see her in prison in Coleman, Florida, in connection with this motion. The proposed plea agreement set forth a 57 to 72 months imprisonment. Genao testified that Sands did give her some documents during the April 2010 meetings, but she did not believe the plea agreement was included in the documents. Genao testified that at her meeting with Sands on April 19, 2010, it was her understanding that she either had to go to trial or plead guilty without an offer from the Government. Genao further testified that at trial, although her counsel and the Government discussed a plea, no such offer was made to Genao. Genao indicated that if the plea offer had been shown to her, she would have accepted the offer of pleading to one charge with a term of imprisonment of 57-72 months.

Sands and Heller testified that they received plea offers from the Government during an April 12, 2010 meeting in Washington, D.C., along with draft Rule 11 Plea Agreements for their respective clients. Sands and Heller met with Genao and her husband on April 16, 2010 at Heller's office. Joseph Vredevelt and Johanna Garcia Benedi ("Garcia"), associates of Heller, were in

attendance. Sands, Heller and Garcia testified that Garcia translated the plea offer to Genao and her husband. Sands testified that they spent two to three hours in Heller's office discussing the plea offers. Sands indicated that they discussed the dollar loss amount, possible cooperation by Genao, sentencing guidelines issues and many other factors that could have enhanced the sentence. Heller and Garcia testified that the plea agreement was reviewed with Genao each page and each paragraph. Garcia, an associate with Heller's firm at that time, testified that it was common for her to translate for Spanish-speaking clients and that she recalled translating the plea offer to Genao. Garcia testified that her first language is Spanish and she has been speaking Spanish since birth. Sands testified that he gave Genao a copy of the plea agreement at the April 16, 2010 meeting. Genao conceded on cross-examination that she was given certain documents at the first meeting, but she claimed she never reviewed them because she was overwhelmed.

Sands, Heller and Garcia testified that Genao rejected the plea offer during the meeting. Heller and Garcia testified that Genao indicated she wanted to go to trial. Heller indicated that Genao feared that if she accepted the plea offer, Genao would lose her medical license. Sands asked Genao to think about the offer and indicated that she did not have to make a decision that day. Sands scheduled a second meeting on Monday, April 19, 2010 to discuss the plea offers. At this

second meeting, Sands and Heller testified that Genao and her husband again rejected the plea offers. Sands and Heller testified that the second meeting was translated into Spanish by either Garcia or by Heller's secretary, Gia Alonzo. Garcia testified that she translated for Genao in at least three meetings. Sands' contemporaneous notes of the April 16, 2010 meeting reflect that the plea offers were discussed, the proposed Rule 11 Agreements were given to Genao and her husband and that Garcia assisted in the translation. Sands' contemporaneous notes of the April 19, 2010 meeting indicate that Genao responded that she "definitely" wanted to go to trial.

Based on the evidence submitted at the evidentiary hearing and in the parties' briefs, the Court finds that Genao has failed to meet her burden to show that her counsel did not convey the Government's written plea offer to her. In this case, there are two conflicting versions of whether Sands conveyed the Government's plea offer to Genao. Genao testified that Sands failed to convey the Government's plea offer to her, verbally or in writing. Sands testified that he and Heller conveyed both to Genao and her husband the Government's plea offers and that he reviewed each page and paragraph of the written offer to Genao. Heller and Garcia testified that to at the first and second meeting in April 2010, Sands reviewed the Government's plea offer at length with Genao and that Genao. On

both days, Genao rejected the offer. Sands' contemporaneous notes of the two meetings support his version of the meetings.

Genao's testimony is consistent with her claim that Sands never conveyed a plea offer by the Government to her. She admits to having two meetings in April 2010 after her counsel went to Washington, D.C. to discuss plea offers from the Government. Yet, she claims that no such plea offers resulted from the meeting her counsel had with the Government in Washington, D.C. The Court finds Genao's testimony that no plea offers were discussed at the two meetings between Genao, her husband and both counsel, is not credible. These meetings were immediately after the counsels' trip to Washington, D.C. and the meetings were lengthy. Sands, Heller and Heller's associate, Garcia, all testified that the plea offers were discussed at length with Genao and her husband and that a copy of the Rule 11 Plea Agreement was given to Genao after the first meeting. Although Genao testified that she did not receive a copy of the written Rule 11 Plea Agreement, she admitted that she did receive documents after the first meeting, but that she did not review the documents because she was overwhelmed. Sands' contemporaneous notes support his testimony that the plea offer was discussed and that Genao was given a copy of the written Rule 11 Plea Agreement.

Genao testified that she does not understand English that well. Although it

may well be that Genao does not understand English perfectly, she understands English well enough to pass her medical boards and other examinations to become licensed as a medical doctor in the United States. Genao is also able to communicate with her patients, although her main practice appeared to be in the Miami, Florida area where Spanish is often spoken. Even if Genao is unable to understand English well enough to discuss matters with her counsel, the testimony from Sands, Heller and Garcia was that Garcia translated the discussions and the Rule 11 Plea Agreement, with Genao, paragraph by paragraph at the April 16, 2010 meeting. Although Genao claims that Garcia was not a certified Spanish translator, Genao has not shown that certification is required in discussions between her and her counsel. Garcia testified that Spanish is her first language and that she has had to translate for her parents for years because they cannot speak English. Genao's testimony that she does not understand English well enough or that the contents of the Rule 11 Plea Agreement was not properly translated to her in Spanish is not credible.

Genao claims that the testimonies of Sands and Heller were not credible because they had a financial incentive to go to trial instead of taking a plea. Genao argues that both Heller's and Sands' testimonies regarding their fee structure were evasive. The Court agrees that Heller's and Sands' testimonies on their respective

fee structures were less than candid, but they did not dispute Genao's claim that Heller and Sands received from Genao and her husband close to $300,000 in fees. The fees may be reasonable in light of the length of the pretrial and trial proceedings in this case and the agreement between Heller and Sands and their clients, Genao and her husband. There is no dispute that the fees between counsel and clients are subject to an agreement. The amount of fees alone cannot establish lack of credibility on the part of Heller or Sands because Heller and Sands do not dispute that they received from Genao and her husband fees close to $300,000.

Genao claims that she would have accepted the Rule 11 Plea Agreement if she would have known about the offer. However, Genao has not admitted to any of the factual allegations in the proposed Rule 11 Plea Agreement. She has consistently denied any guilt in connection with the charges brought against her. On appeal, and even in her post-judgment submissions before the Court, Genao does not admit that she was guilty of any of the charges or, in particular, the charge set forth in the proposed Rule 11 Plea Agreement. Genao asserts in her motion that she was used as a "scapegoat" in the case. She further asserts that she only had an advisory role in the Michigan clinics since she was not a licensed physician in Michigan. Genao claims her counsel failed to argue she only had a minimal role in the conspiracy and that the amount attributed to her at sentencing was incorrect.

(Motion, Doc. No. 281) Genao only testified that she would have accepted the plea offer with the proposed sentencing range of 57-71 months, had she known of such offer. *Frye* requires that Genao must show that she would have accepted the Rule 11 Plea Agreement offered by the Government, if such an offer was made. Other than agreeing to the lower sentencing range than what she received at sentencing, Genao has not made a showing that she would have accepted the facts set forth in the Rule 11 Plea Agreement establishing her guilt.

Based on the above, the Court finds that Genao's counsel conveyed the plea offer to Genao in April 2010 and that Genao did not accept the offer. The Court also finds that even if the plea offer was conveyed to Genao, she has failed to establish prejudice in that she has not shown she would have accepted the proposed Rule 11 Plea Agreement offered by the Government.

### III. CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2225 Proceedings, which was amended as of December 1, 2009, requires that a district court must issue or deny a certificate of appealability when it enters a final order. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability,* 106 F.3d 1306, 1307 (6th Cir. 1997).

Although Genao failed to show she was denied ineffective assistance of counsel as set forth above, the Court finds that a certificate of appealability should be issued in this case. The issue certified is whether Genao's counsel was ineffective for failing to convey a plea offer made by the Government and whether Genao was prejudiced by counsel's failure to convey the plea offer. The Court issues a certificate of appealability should Genao file an appeal.

## IV. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that the Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 **[Criminal Case No. 09-20221-D9, Doc. No. 281]** is **DENIED.**

IT IS FURTHER ORDERED that the Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 **[Civil Case No. 12-10989]** is **DISMISSED with prejudice and designated as CLOSED.**

IT IS FURTHER ORDERED that a certificate of appealability is issued in this case.

                                      s/Denise Page Hood  
                                      Denise Page Hood  
                                      United States District Judge

Dated: February 27, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 27, 2015, by electronic and/or ordinary mail.

                                      s/LaShawn R. Saulsberry  
                                      Case Manager